**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
(Eastern Division)**

| | |
|---|---|
| ACCESS LIVING OF METROPOLITAN CHICAGO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., *et al.*, <br><br> Defendants. | **No. 16-cv-09690-MSS-MV** <br><br> Hon. Manish S. Shah, U.S.D.J. <br><br> Hon. Maria Valdez, U.S.M.J. <br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
<u>MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..........................................................................................................................1

BACKGROUND ..........................................................................................................................4

ARGUMENT ...............................................................................................................................5

    I.    Plaintiffs Fail to Plausibly Allege An Injury-In-Fact ........................................................6

        A.    Having Never Attempted To Use The Uber App, The Individual Plaintiffs Do Not Allege An Article III Injury ...............................................................6

        B.    Access Living's Alleged Diversion Of Resources Is Not An Article III Injury .........8

    II.    Plaintiffs Do Not Plausibly Allege An Injury Caused By Uber ........................................10

    III.    Plaintiffs Fail To Plausibly Allege An Injury Likely To Be Redressed By A Favorable Decision In This action .................................................................................11

    IV.    Access Living Lacks Associational Standing .................................................................12

    CONCLUSION............................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abreu v. Harold's Chicken Shack #60, LLC*,
    No. 16-0243, 2018 WL 1523208 (N.D. Ind. Mar. 28, 2018) ...................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................................................5

*Clapper v. Amnesty Int'l*,
    568 U.S. 398 (2013) .........................................................................................................10

*Concealed Carry, Inc. v. City of Chicago*,
    No. 02-7088, 2006 WL 2860975 (N.D. Ill. Sept. 28, 2006) ...........................................12, 13

*Dudley v. Hannaford Bros. Co.*,
    333 F.3d 299 (1st Cir. 2003) ...............................................................................................8

*Freedom Watch, Inc. v. Sessions*,
    281 F. Supp. 3d 159 (D.D.C. 2017) .....................................................................................9

*Freiburger v. Emery Air Charter, Inc.*,
    795 F. Supp. 253 (N.D. Ill. 1992) ........................................................................................2

*Fund Democracy, LLC v. SEC*,
    278 F.3d 21 (D.C. Cir. 2002) .............................................................................................13

*Greater Hous. Transp. v. Uber Techs., Inc.*,
    155 F. Supp. 3d 670 (S.D. Tex. 2015) ................................................................................4

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ........................................................................................................8, 9

*Hope, Inc. v. DuPage Cty.*,
    738 F.2d 797 (7th Cir. 1984) .............................................................................................13

*Hummel v. St. Joseph Cty. Bd. of Comm'rs*,
    817 F.3d 1010 (7th Cir. 2013) .............................................................................................6

*Hunt v. Wash. Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ........................................................................................................12

*Ind. Democratic Party v. Rokita*,
    458 F. Supp. 2d 775 (S.D. Ind. 2006) ..................................................................10

*Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    719 F.3d 601 (7th Cir. 2013) .............................................................................10

*Kawczynski v. Am. Coll. of Cardiology*,
    670 F. App'x 398 (7th Cir. 2016) ......................................................................11

*Klay v. All Defendants*,
    389 F.3d 1191 (11th Cir. 2004) .........................................................................13

*Lexmark Int'l v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014)........................................................................................8

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).............................................................................5, 7, 10, 11

*In re Managed Care Litig.*,
    No. 00-1334, 2003 WL 22410373 (S.D. Fla. Sept. 15, 2003) .................................14

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017).............................................................................11, 14

*Parr v. L & L Drive-Inn Rest.*,
    96 F. Supp. 2d 1065 (D. Haw. 2000) ....................................................................7

*Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
    713 F. Supp. 2d 734 (N.D. Ill. 2010) ..............................................................13, 14

*Perry v. Sheahan*,
    222 F.3d 309 (7th Cir. 2000) .............................................................................12

*Plotkin v. Ryan*,
    No. 99-cv-0053, 1999 WL 965718 (N.D Ill. Sept. 29, 1999).............................9, 10

*Scherr v. Marriott Int'l, Inc.*,
    703 F.3d 1069 (7th Cir. 2013) ..........................................................................6, 7

*Schmidt v. Lessard*,
    414 U.S. 473 (1974)..........................................................................................12

*Silha v. ACT, Inc.*,
    807 F.3d 169 (7th Cir. 2015) ............................................................................5, 9

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)........................................................................................6

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998).........................................................................................12

*Uber Promotions, Inc. v. Uber Techs., Inc.*,
    162 F. Supp. 3d 1253 (N.D. Fla. 2016).........................................................11

*Vill. of Old Mill Creek v. Star*,
    Nos. 17-cv-1163 & 17-cv-1164, 2017 WL 3008289 (N.D. Ill. July 14, 2017) ..................5, 11

*Williams v. Adams*,
    625 F. Supp. 256 (N.D. Ill. 1985) .................................................................9

**Statute**

42 U.S.C. § 12188(a)(1)....................................................................................8

## INTRODUCTION

Uber Technologies, Inc. ("Uber") is a technology company.  It develops software and other technologies for a number of industries, including the ridesharing industry.  For the ridesharing industry, Uber offers a cutting-edge smartphone application (the "Uber App") that networks riders seeking rides and independent, third-party transportation providers ("Drivers") looking to provide rides in several U.S. cities, including Chicago.

The Uber App and the rides bought and sold between riders and Drivers have been revolutionary for both riders and Drivers with accessibility needs.  For example, the Uber App has increased mobility options and economic opportunities for (1) riders who are blind or have low vision, because Uber App is compatible with mobile screen-reading technology and wireless braille displays;  (2) riders and Drivers who are deaf or hard of hearing, because the Uber App is fully functional without audio and offers visible and vibrating alerts; (3) for Drivers who use modified vehicles and/or hand controls; and (4) for riders who use folding wheelchairs, walkers, canes, and scooters, which can be stowed in any vehicle.

Uber also has made significant strides in facilitating the ability of riders who require specially-equipped, wheelchair accessible vehicles ("WAVs") to more easily request and obtain rides from Drivers who both choose to invest in WAVs and use the Uber App to seek and accept ride requests.   In Chicago, Uber first offered an option within the Uber App that enabled riders to request rides from Chicago taxi Drivers with WAVs, making more efficient use of existing WAV supply.  And in Chicago and a handful of other cities, Uber has commenced experimental pilots involving an option within the Uber App called "uberWAV."  These pilots include extensive efforts to facilitate Drivers' ability to obtain WAVs and to inform them of enhanced earning opportunities associated with seeking and accepting WAV ride requests via the Uber App.

Plaintiffs have never used the Uber App to request rides from WAV taxi Drivers or Drivers who have chosen to seek and accept ride requests via the uberWAV option. This is so even though Plaintiffs can request WAV rides via the Uber App with wait times under fifteen minutes, which is a significant improvement over the wait times associated with traditional paratransit options. Notwithstanding, Plaintiffs sue Uber and its subsidiary, Rasier, LLC (together, "Uber"), claiming the service Drivers provide to actual Uber App users who request rides via the uberWAV option is not good enough. Specifically, they contend that too few Drivers with WAVs have signed up to seek and accept ride requests via the Uber App to meet demand. They paint this lopsided supply and demand, which only reflects market realities, as a violation of Title III of the Americans with Disabilities Act ("ADA"), and they claim Uber is the culprit. Plaintiffs—an advocacy organization and three of its employees—all lack standing to assert that claim.[1]

*First*, no Plaintiff plausibly alleges an injury-in-fact. The individual Plaintiffs have never used the Uber App. They never even downloaded the free application to their smartphones or created a free Uber rider account. Nor do they allege that they intend to use the Uber App in the future or that they would use the Uber App but for the allegedly deficient WAV supply. More is needed for ADA plaintiffs to make out an injury-in-fact.

The organizational Plaintiff—Access Living of Metropolitan Chicago—also fails to allege a cognizable injury. Access Living claims Uber's failure to guarantee robust WAV supply in Chicago has frustrated its mission to promote independent living and has somehow forced it to provide additional transportation to its board members. It is well-settled that frustration of an

---

[1] Simultaneously with this motion, Uber filed a motion for judgment on the pleadings. Because the question whether Plaintiffs lack standing goes to this Court's subject-matter jurisdiction, this motion must be resolved first. *See Freiburger v. Emery Air Charter, Inc.*, 795 F. Supp. 253, 256 (N.D. Ill. 1992). However, should the Court determine that Plaintiffs have standing, the Court should enter judgment for Uber for the reasons set forth in that motion.

organization's mission, without more, is not a cognizable Article III injury. And there is nothing more here. For Access Living's claim that it diverted resources from some unspecified sources to providing increased transportation to its board members has nothing to do with Uber.

*Second*, Plaintiffs' purported injuries are not plausibly attributable to anything Uber has done or failed to do. Access Living's decision to provide additional transportation to its board members is a self-inflicted injury; Uber did not cause it. And as all Plaintiffs concede, Uber does not own the vehicles Drivers use to provide rides requested via the Uber App. Drivers determine whether, when, where, how frequently, and with what types of vehicles to operate. Uber cannot force Drivers to use the Uber App, to acquire WAVs and use them to provide rides, or to log on to accept WAV ride requests during different or longer hours. Drivers, not Uber, make those choices.

*Third*, Plaintiffs' purported injuries are not redressable. Uber alone cannot remedy the allegedly deficient WAV supply. Drivers retain discretion to determine whether and how often to seek and accept WAV ride requests via the Uber App. No relief Plaintiffs might obtain in this action will change that; nor may any relief bind Drivers, who are not before the court.

*Finally*, Access Living does not have any members and, therefore, is not the sort of organization eligible for associational standing. Moreover, even if Access Living had members, associational standing fails whenever the organization's members would lack standing in their own right. Any "members" Access Living might muster lack standing in their own right for the same injury-in-fact, causation, and redressability defects that deprive the individual plaintiffs of standing.

For all of these reasons, and others discussed below, Plaintiffs lack standing. Accordingly, the complaint should be dismissed in its entirety for lack of subject-matter jurisdiction.[2]

---

[2]    Pursuant to the Court's Case Procedures, defense counsel requested Plaintiffs' position on this motion via email. Plaintiffs did not respond.

## BACKGROUND

The Uber App is a smartphone application that networks Drivers and riders seeking and making ride requests. Compl. ¶ 5. The Uber App "is available to customers with a smartphone who download" it, "open an Uber account, and register a credit card to pay for their rides." *Id.* ¶ 21. Riders may "request transportation" from a Driver via the Uber App, and the Driver may choose to accept the request and provide transportation (or not). *Id.* ¶ 5. The Uber App facilitates these rider-Driver transactions, but "Uber does not own the vehicles" Drivers use to provide rides. *Id.* Drivers are not Uber employees, and Uber does not—because it cannot—force them to drive WAVs or any other types of vehicles. *See, e.g.*, *Greater Hous. Transp. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 677 (S.D. Tex. 2015) ("Uber does not own vehicles or employ drivers.").

Access Living is an advocacy organization in Chicago. Compl. ¶ 9. It is not and "does not allege" to be "a membership organization." Ex. A at 1 (Access Living's Response to Defendants' Second Set of Requests for Production of Documents).

Michelle Garcia, Justin Cooper, and Rahnee Patrick ("Individual Plaintiffs") work for Access Living. *Id.* ¶¶ 32, 45, 38. Garcia and Cooper require WAVs for transportation. *Id.* ¶¶ 32, 45. Patrick does not require a WAV for transportation; her husband, who is not a party, does. *Id.* ¶ 39. Even though the Uber App in Chicago has included two options that allow riders to specifically request rides from Drivers with WAVs—uberTAXI and uberWAV, *id.* ¶¶ 21, 29—the Individual Plaintiffs never downloaded the Uber App to request a WAV ride, *id.* ¶¶ 37, 44, 49.

- Even though Garcia normally travels to work in "a wheelchair-accessible taxi," *id.* ¶ 33, she never downloaded the Uber App, *id.* ¶ 37.

- Even though Cooper may (or may not) have once used the Uber App to request a ride with a friend to the mall, he did not bother to downloaded the Uber App because he recalled an

"unsuccessful effort to pass a Chicago ordinance requiring Uber to provide a minimum number of wheelchair accessible vehicles." *Id.* ¶¶ 46–47.

- Even though Patrick is able to travel in any vehicle, she has never downloaded the Uber App. *Id.* ¶ 44. Patrick's husband downloaded the Uber App when, for an outreach event, "Uber agreed to transport persons with disabilities to Victory Gardens," but he decided not to create an account to take advantage of that offer "because he recalled colleagues telling him that Uber does not accommodate motorized wheelchair users." *Id.* ¶¶ 41–42.

Each Individual Plaintiff alleges to have seen the Uber App only once: when their employer and counsel of record in this litigation, Access Living, showed it to them a couple weeks before filing this lawsuit. *Id.* ¶¶ 36, 43, 48. Nevertheless, they all allege they "want to use" the Uber App, *id.* ¶ 11, though none alleges that she or he intends to do so.

## ARGUMENT

The Article III standing elements are familiar—injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A plaintiff lacks standing unless she "clearly allege[s] facts that demonstrate each element." *Vill. of Old Mill Creek v. Star*, Nos. 17-cv-1163 & 17-cv-1164, 2017 WL 3008289, at *5 (N.D. Ill. July 14, 2017) (Shah, J.). The *Twombly/Iqbal* "facial plausibility" standard governs whether a plaintiff's allegations are sufficient to demonstrate standing. *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a plaintiff lacks standing when, "stripping away all conclusory statements of wrongdoing," the allegations fail to plausibly demonstrate each element of Article III standing. *Silha*, 807 F.3d at 174. Under these settled principles, Plaintiffs fail to plausibly allege standing.

## I. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE AN INJURY-IN-FACT.

### A. Having Never Attempted To Use The Uber App, The Individual Plaintiffs Do Not Allege An Article III Injury.

To qualify as an injury-in-fact, the plaintiff's alleged harm must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). The only form of relief available to private litigants under Title III of the ADA is injunctive relief, and when the plaintiff seeks such relief, there also must be a "real and immediate threat"—*i.e.*, "at least a substantial risk"—of repeated future injury. *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1019 (7th Cir. 2013). To satisfy these requirements at the pleading stage, an ADA plaintiff who has not encountered the accessibility barrier at issue must plausibly allege both "actual knowledge of an alleged ongoing violation" *and* "an intent to return to the particular place (or places) where the violations are alleged to be occurring." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1075 (7th Cir. 2013).

The Individual Plaintiffs do not plausibly allege either requirement. They have no "actual knowledge of an ongoing violation" or accessibility barrier because they have not actually attempted to request a ride via the Uber App (even though they could do so now with wait times under 15 minutes). And they do not allege the requisite "intent to return"—*i.e.*, to use the Uber App in the future.

A primary indicator of whether a plaintiff intends to return to a facility is "the past frequency of her" patronage of that facility. *Id.* at 1074. The Individual Plaintiffs, however, *never* have been patrons of Uber (even though the uberWAV option is available in the Uber App in Chicago). They admit they never used the Uber App. Compl. ¶¶ 37, 44, 49. The only time the Individual Plaintiffs claim to have even seen the Uber App is when Access Living—their employer and counsel of record—showed it to them shortly before commencing this lawsuit. *Id.* The

6

Individual Plaintiffs' lack "of past patronage" alone "seems to negate the possibility of future injury." *Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1079 (D. Haw. 2000).

Moreover, while the Individual Plaintiffs allege that they "want[] to use Uber," Compl. ¶¶ 34, 44, 49, they do not allege any specific facts to plausibly suggest any concrete plans to do so in the future (again, even though the uberWAV option is available in Chicago). For example, they do not allege any specific instance in which they attempted to use the Uber App in the past or might consider using it in the future. They do not allege that they are willing to take the basic, threshold steps necessary to do so: downloading the Uber App to their smartphones, creating Uber rider accounts, and agreeing to Uber's Privacy Policy and Terms of Use, including the mandatory arbitration agreement within. And they do not even assert that they would use the Uber App but for the allegedly deficient number of Drivers with WAVs who are available to seek and accept ride requests via the Uber App.

Thus, at most, the Individual Plaintiffs allege only speculative, "some day" intentions to use the Uber App, which are insufficient to give them standing. *See Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.") (emphasis in original); *Scherr*, 703 F.3d at 1075 ("[A]t no point does [plaintiff] claim that she would visit a particular [facility] but for the alleged ADA violations, and she does not show an intent even to return to any geographic area where another [facility] is located. Absent such a showing, she cannot establish standing to pursue her claim against the other [facilities].."); *Abreu v. Harold's Chicken Shack #60, LLC*, No. 16-0243, 2018 WL 1523208, at *2 (N.D. Ind. Mar. 28, 2018) (plaintiff's "unspecified vague assertion that he'll likely return at some point in the future" is insufficient for standing). These "some day" allegations are all the more speculative

given that "some day" could be "right now," because the uberWAV option is available in the Uber App in Chicago. Compl. ¶ 21.

Finally, the legal conclusion that "it would be futile" to download the Uber App and request a WAV ride (which Garcia, but no other Plaintiff alleges, Compl. ¶ 37) is not a plausibly alleged fact. Nor does it negate Article III's standing requirements. Whether a particular action is "futile" is relevant to whether a plaintiff has *a private right of action* under Title III of the ADA (under 42 U.S.C. § 12188(a)(1)); it is not relevant to whether that plaintiff has *Article III standing*. *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 306 (1st Cir. 2003); *see Lexmark Int'l v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014) (distinguishing "statutory standing," which goes to the existence of a private right of action, and Article III standing, which is constitutional, immutable, and different).

Even still, "futility" for purposes of a private right of action "must be anchored in demonstrable reality"; "[a] pessimistic prediction or a hunch" will not suffice. *Dudley*, 333 F.3d at 307 n.3. Garcia's allegation of futility is not anchored in demonstrable or even plausible reality in light of her allegations that (a) Uber App users may request rides from taxi Drivers with WAVs via the Uber App (Compl. ¶ 29); (b) she "uses a wheelchair-accessible taxi" to get to work (*id.* ¶ 33); and (c) notwithstanding, she has never downloaded the Uber App (*id.* ¶ 37).

### B. Access Living's Alleged Diversion Of Resources Is Not An Article III Injury.

For an organization, injury-in-fact requires more than a setback to its interests or goals. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). An organization sustains an injury-in-fact only when the challenged conduct has "perceptibly impaired" its ability to provide services. *Id.* Thus, like any plaintiff, an organizational "plaintiff who would have been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does

not have standing under Article III." *Silha*, 807 F.3d at 174–75. Neither of the two harms Access Living alleges—frustration of mission and routine operating costs—meets this standard.

As for the claim that the allegedly deficient WAV supply "frustrates Access Living's performance of its mission of empowering persons with disabilities to live independently," Compl. ¶ 59, it is well settled that such allegations of harm to an organization's abstract interests are insufficient to make out an injury-in-fact. *See Havens*, 455 U.S. at 379; *Plotkin v. Ryan*, No. 99-cv-0053, 1999 WL 965718, at *5 (N.D Ill. Sept. 29, 1999). Access Living performs its mission through advocacy and by "offering peer-oriented independent living services" and "public education programs." Compl. ¶ 9. Nowhere in the complaint does Access Living allege that anything Uber did or failed to do has impaired its ability to offer such services and programs. What Access Living "alleges is that the wrongdoing harms its *objective*, not *it*," which "is exactly the sort of abstract injury that does not rise to the level of injury-in-fact." *Freedom Watch, Inc. v. Sessions*, 281 F. Supp. 3d 159, 163 (D.D.C. 2017) (emphases in original); *accord Williams v. Adams*, 625 F. Supp. 256, 260 (N.D. Ill. 1985) ("[I]t is not enough that an organization allege that a particular defendant's conduct is against the policies or goals of that organization.").

Access Living's claim that it had to spend money to transport board members and staff who allegedly are unable to request WAV rides via the Uber App (Compl. ¶ 59) also is insufficient (and is belied by Plaintiffs' correct allegation that the uberWAV option is available in Chicago). This is not a diversion of resources sufficient to establish injury-in-fact. It is not a diversion at all. Access Living does not allege that it would have used those funds for other purposes or identify what those other purposes might be. Nor does Access Living allege *how* the "increased costs" it chose to incur to transport some of its board members and staff (*id.*) are any different now than they were before the Uber App or the uberWAV option within became available in Chicago.

9

Indeed, Access Living could not allege—at least not plausibly—that the availability of the uberWAV option somehow *decreased* transportation options for riders who require WAVs for transportation and forced Access Living to *increase* the transportation services it provides. If anything, the opposite is true. Access Living cannot bootstrap its normal operating expenses to claim injury-in-fact. *See Plotkin*, 1999 WL 965718 at *5.

## II.     PLAINTIFFS DO NOT PLAUSIBLY ALLEGE AN INJURY CAUSED BY UBER.

Article III standing demands a causal link between the claimed injury and the defendant's challenged conduct. *Lujan*, 504 U.S. at 560. When the plaintiff's asserted injury is self-inflicted or is "the result of the independent action of some third party not before the court," the causal chain is broken and the plaintiff lacks standing. *Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719 F.3d 601, 606 (7th Cir. 2013); *see Clapper v. Amnesty Int'l*, 568 U.S. 398, 417 (2013). That describes the injuries Plaintiffs assert here.

As explained above, Access Living has not plausibly alleged that it diverted any resources to providing increased transportation for its board members and staff. Even if it had, however, any harm to Access Living would be entirely self-inflicted. Access Living has no duty or obligation to transport its employees; if it did, any such duty would be due to its decision to accept federal funds to operate as a center for independent living under 29 U.S.C. §§ 794 and 796f-4. *See* Compl. ¶ 50. Thus, any injury Access Living sustained is the product of Access Living's "sole and voluntary discretion." *Ind. Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 816–17 (S.D. Ind. 2006) (citing *Fair Emp't Council v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994)).

Nor is the injury the Individual Plaintiffs allege—too few Drivers who have chosen to invest in WAVs on the road and logged on to the Uber App in Chicago—fairly traceable to Uber. Despite Uber's WAV-related efforts in Chicago, both the number of WAVs on the road and number of Drivers with WAVs available to accept rides requested via the Uber App ultimately

turn on choices made by third-parties, not by Uber. *See Star*, 2017 WL 3008289, at *5 (injury "not traceable" to governmental defendant "because that injury would exist" even without the challenged statute). As Plaintiffs are constrained to admit, "Uber does not own the vehicles" Drivers use when providing rides requested via the Uber App. Compl. ¶ 5. It is common knowledge that Drivers determine whether, when, where, how frequently, *and with which vehicles* to seek and accept ride requests via the Uber App. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 70 (2d Cir. 2017); *Uber Promotions, Inc. v. Uber Techs., Inc.*, 162 F. Supp. 3d 1253, 1259 (N.D. Fla. 2016). Drivers may exercise those choices in favor of the Uber App (or not), in favor of WAVs (or not), or in favor of light driving schedules (or not). It's up to them. Those intervening choices break the causal chain necessary for Article III standing. *See, e.g.*, *Kawczynski v. Am. Coll. of Cardiology*, 670 F. App'x 398, 400 (7th Cir. 2016).

Plaintiffs' vague allegations that Uber "controls" the conditions it attaches to Drivers' license of Uber's technology, relating to the age and safety of vehicles, Compl. ¶ 25, background checks, *id.* ¶ 26, and so forth do not reestablish the causal chain. For Plaintiffs do not and cannot allege that Uber dictates whether, when, where, or how frequently Drivers choose to log on to the Uber App in order to offer rides in WAVs or any other types of vehicles.

## III. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE AN INJURY LIKELY TO BE REDRESSED BY A FAVORABLE DECISION IN THIS ACTION.

Article III standing requires that it "be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. The vague relief Plaintiffs seek—an injunction "requiring Uber to provide service to motorized wheelchair users that is equivalent to the service it provides to general public [sic]," Compl. ¶ 12— is not likely to redress Plaintiffs' purported injuries. For one thing, as Plaintiffs correctly admit, Uber already

offers an option within the Uber App specifically designed to network riders who require WAVs and Drivers who possess WAVs—uberWAV. *Id.* ¶ 21.

That Plaintiffs nonetheless claim that Uber has failed to provide nondiscriminatory service to such riders proves that Uber alone cannot redress their purported injuries. That is because redress for the transportation difficulties Plaintiffs allege will invariably turn on whether enough Drivers choose to invest in WAVs, choose to use them to provide rides requested via the Uber App, and choose to do so with frequency sufficient to meet the alleged demand. (The same is true in the case of riders without disabilities and Drivers with standard sedans.) Uber cannot force Drivers to do any of that, and neither may this Court in this action. *See Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed."). "[R]elief that does not remedy the injury suffered," like the relief Plaintiffs seek here, "cannot bootstrap a plaintiff into federal court." *Perry v. Sheahan*, 222 F.3d 309, 314 (7th Cir. 2000); *accord Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

## IV.   ACCESS LIVING LACKS ASSOCIATIONAL STANDING.

Sometimes, membership organizations may assert claims on behalf of their members. *See Hunt v. Wash. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). This "associational standing" applies only when a membership organization's "members would otherwise have standing to sue in their own right," and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* For several reasons, Access Living cannot avail itself of this type of standing.

*First*, associational standing is available only to actual membership organizations and organizations that bear all the "indicia of a membership organization." *Concealed Carry, Inc. v. City of Chicago*, No. 02-7088, 2006 WL 2860975, at *4 (N.D. Ill. Sept. 28, 2006) (citing *Hunt*,

432 U.S. at 344); *accord Fund Democracy, LLC v. SEC*, 278 F.3d 21, 25–26 (D.C. Cir. 2002). Access Living readily admits that it is not a membership organization. Ex. A at 1 (refusing to produce documents related to membership on the ground that "[t]he Complaint filed in this matter does not allege Access Living is a membership organization"). It does not have members; it has "employees" and "board members." Compl. ¶¶ 10, 45, 51, 59. Nor is it otherwise like membership organizations, which are financed, served, and led exclusively by their constituents. *Concealed Carry*, 2006 WL 2860975, at *4. Access Living bears none of these "indicia of a membership organization." *Id.* It operates under 29 U.S.C. §§ 794 and 796f-4 (Compl. ¶¶ 9, 13), which means it is financed by *the federal government*, not just the individuals it accepts federal funds to serve. Access Living also does not allege that its constituents elect its leadership. And while Access Living alleges that it "is governed and staffed *by a majority* of people with disabilities," *id.* ¶ 10 (emphasis added), it does not allege that its constituents "alone" comprise its workforce, *Concealed Carry*, 2006 WL 2869075, at *4.

*Second*, associational standing is derivative, so it may never be broader than the standing of the individuals the organization purports to represent. *Hope, Inc. v. DuPage Cty.*, 738 F.2d 797, 814 (7th Cir. 1984). Thus, even if Access Living were a membership organization, it would lack associational standing for the injury-in-fact, causation, and redressability defects discussed above.

*Finally*, "[a]ssociations suing in a representative capacity are bound by the same limitations that bind their members." *Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 713 F. Supp. 2d 734, 743–44 (N.D. Ill. 2010). Accordingly, organizations cannot litigate claims on behalf of persons who would be bound to arbitrate the same claims. *See id.*; *Klay v. All Defendants*, 389 F.3d 1191, 1202–03 (11th Cir. 2004). Sorting out which members are and are not bound to arbitrate necessarily requires those individuals to participate in the litigation, stripping the

13

organization of associational standing. *Penn. Chiropractic*, 713 F. Supp. 2d at 744. That dooms associational standing here, even if Access Living were a membership organization.

Every Access Living "member" who has taken the basic threshold steps necessary to plausibly allege an injury-in-fact—that is, downloaded the Uber App and created an account to request a ride, *see supra*, Section I.A—is arbitration-bound. That is because in order to use the Uber App, a rider must first create an Uber rider account; riders cannot do so unless they agree to Uber's Terms of Use, including the agreement to arbitrate all claims. *See Meyer*, 868 F.3d at 71. Thus, it is highly likely that any "member" of Access Living who could plausibly allege a cognizable injury has created an Uber account and thereby agreed to arbitrate the claim asserted in this case. That prospect compels the participation of individual members. *See, e.g.*, *Penn. Chiropractic*, 713 F. Supp. 2d at 744; *In re Managed Care Litig.*, No. 00-1334, 2003 WL 22410373, at *10 (S.D. Fla. Sept. 15, 2003).

## **CONCLUSION**

The Complaint should be dismissed for lack of subject-matter jurisdiction.

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

Dated: May 18, 2018

s/ Anne Marie Estevez
Anne Marie Estevez (*pro hac vice*)
200 Biscayne Boulevard, Suite 5300
Miami, FL 33131
T: 305.415.3000
F: 305.415.3001
annemarie.estevez@morganlewis.com

Stephanie Schuster (ID 1011924)
Patrick Harvey (ID 995570)
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: 202.739.3000
F: 202.739.3001

stephanie.schuster@morganlewis.com
patrick.harvey@morganlewis.com

Kristal D. Petrovich (ID 6321292)
77 West Wacker Driver, Fifth Floor
Chicago, IL 60601
T:  312.324.1000
F:  312.234.1001
kristal.petrovich@morganlewis.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the on May 18, 2018 the foregoing was filed with this Court's CM/ECF system, which will notify all counsel of record including:

Steven P. Blonder
Jonathan L. Loew
Daniel A. Hantman
MUCH SHELIST, P.C.
191 N. Wacker Drive, Suite 1800
Chicago, IL 60606
sblonder@muchshelist.com
jloew@muchshelist.com
dhantman@muchshelist.com

Charles R. Petrof
ACCESS LIVING OF METROPOLITAN CHICAGO
115 W. Chicago Avenue
Chicago, IL 60654
cpetrof@accessliving.org

s/ Anne Marie Estevez
Anne Marie Estevez