**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS (Eastern Division)**

ACCESS LIVING OF METROPOLITAN CHICAGO, *et al.*,

Plaintiffs,

v.

UBER TECHNOLOGIES, INC., *et al.*,

Defendants.

**No. 16-cv-09690-MSS-MV**

Hon. Manish S. Shah, U.S.D.J.

Hon. Maria Valdez, U.S.M.J.

**ORAL ARGUMENT REQUESTED**

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

ARGUMENT ............................................................................................................................1

I. Plaintiffs Fail To Plausibly Allege An Injury-In-Fact ..................................................1

A. The Individual Plaintiffs' Allegation That They Want to Use The Uber App Someday Does Not Plausibly Suggest A Threat Of Immediate Future Injury ........1

B. Access Living Does Not Allege A Cognizable Organizational Injury ....................4

II. Plaintiffs Do Not Allege Any Injury Plausibly Attributable To Uber ...........................5

III. Plaintiffs Do Not Meaningfully Dispute Their Failure To Plausibly Allege A Redressable Injury ..........................................................................................6

CONCLUSION ........................................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Living v. Chi. Transit Auth.*,
No. 00-0770, 2001 WL 492473 (N.D. Ill. May 9, 2001)....................5

*Berger v. NCAA*,
843 F.3d 285 (7th Cir. 2016)....................3

*Car Carriers, Inc. v. Ford Motor Co.*,
745 F.2d 1101 (7th Cir. 1984)....................5

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)....................1

*Crawford v. Uber Techs., Inc.*,
No. 17-2664, 2018 WL 1116725 (N.D. Cal. Mar. 1, 2018)....................3, 6

*Disability Rights Wisc., Inc. v. Walworth Cty. Bd. of Supervisors*,
522 F.3d 796 (7th Cir. 2008)....................3

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982)....................4

*Liberty Res., Inc. v. Se. Penn. Transp. Auth.*,
155 F. Supp. 2d 242 (E.D. Pa. 2001)....................4

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................4, 7

*McNeal v. J.P. Morgan Chase Bank, N.A.*,
No. 16-3115, 2016 WL 6804585 (N.D. Ill. Nov. 17, 2016)....................3

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
696 F.3d 849 (9th Cir. 2012)....................3

*NFB v. Uber Techs., Inc.*,
103 F. Supp. 3d 1073 (N.D. Cal. 2015)....................3

*Parvati Corp. v. City of Oak Forest*,
630 F.3d 512 (7th Cir. 2010)....................5

*Scherr v. Marriott Int'l, Inc.*,
703 F.3d 1069 (7th Cir. 2013)....................2, 4

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) ....................4

*Steel Co v. Citizens for a Better Env't*,
523 U.S. 83 (1998)....................4

*Turlock Irr. Dist. v. FERC*,
786 F.3d 18 (D.C. Cir. 2015)....................5

**Other Authority**

49 C.F.R., Pt. 37, App'x D....................7

## INTRODUCTION

Each Plaintiff fails to plausibly allege the requirements for Article III standing. As Uber showed in its opening brief, that conclusion is dictated by the allegations in the complaint. Plaintiffs respond with two arguments, but neither cures the defects in the complaint.

First, attempting to distract from their deficient allegations, Plaintiffs accuse Uber of relying on facts outside the pleadings to support its standing challenge. That assertion is demonstrably false and should be ignored.

Second, rather than tackle the Article III issues head on, Plaintiffs repeatedly urge this Court to defer to a ruling by another court (in another circuit) in a different case. However, the ruling in that other case is built upon legal error, starting with the court's erroneous conclusion that standing allegations (unlike every other allegation at the pleading stage) need not be plausibly alleged to survive a motion to dismiss. In addition, even the conclusory allegations found sufficient (but not plausible) in that other case exceed Plaintiffs' facially deficient standing allegations here. Which is to say, that other case is as unhelpful to Plaintiffs as it is unpersuasive. The complaint should be dismissed for lack of subject-matter jurisdiction.

## ARGUMENT

### I. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE AN INJURY-IN-FACT.

#### A. The Individual Plaintiffs' Allegation That They Want To Use The Uber App Someday Does Not Plausibly Suggest A Threat Of Immediate Future Injury.

Title III affords private litigants a right to sue only for prospective injunctive relief. To have standing to seek such relief, a plaintiff must plausibly allege both an actual injury *and* "a real and immediate threat" of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983). A plaintiff who has not actually encountered an accessibility barrier (like Plaintiffs here), does not satisfy these requirements if she fails to plausibly allege "actual knowledge of an alleged ongoing

violation" *and* "an intent to return to the particular place (or places) where the violations are alleged to be occurring." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1075 (7th Cir. 2013). Contrary to Plaintiffs' assertion, this is not merely Uber's "suggest[ion]," Pl Br. 8; it's the law of this circuit.

Plaintiffs quibble with the Seventh Circuit's test because it's fashioned to apply to actual, physical spaces. *Id.* But the Seventh Circuit's test makes sense: only actual, physical spaces may be "places of public accommodation" under the ADA. *See* ECF No. 115 at 6–11. And that test is not difficult to apply to here. For, at the very least, it means the individual plaintiffs must plausibly allege an intent to use the Uber App in the near future ("a real and immediate threat" of future injury). The individual plaintiffs allege a conclusory desire to use the Uber App someday, but not any facts that plausibly suggest they imminently intend to do so. And although they allege knowledge of what they believe is an ADA violation, they do not allege "actual knowledge of an alleged *ongoing* violation." *Scherr*, 703 F.3d at 1075 (emphasis added).[1] The individual plaintiffs therefore lack standing. *See* Uber Br. 6–8.

Plaintiffs resort to calling "futile" everything that would plausibly show the necessary intent to use the Uber App in the immediate future—*e.g.*, downloading the app, creating an account, or claiming they would do those things but for the alleged discrimination. Pl. Br. 9. Invoking the "futile" label does not make the individual plaintiffs' conclusory allegations plausible. For one thing, *only Garcia* alleges "it would be futile" to download the Uber App and request a ride. Compl. ¶ 37. Regardless, as Uber explained, whether a particular action is "futile" is relevant to whether a plaintiff has a *private right of action* under Title III of the ADA, not whether she plausibly alleges *Article III standing*. Uber Br. 8. Plaintiffs don't refute this

[1] Contrary to Plaintiffs' assertion, Uber has not argued that a "[p]ersonal encounter with a barrier" is required. Pl. Br. 8.

argument; they ignore it, forfeiting the point. *See, e.g.*, *McNeal v. J.P. Morgan Chase Bank, N.A.*, No. 16-3115, 2016 WL 6804585, at *1 (N.D. Ill. Nov. 17, 2016) (Shah, J.) ("A plaintiff's failure to respond to an argument raised in a motion to dismiss forfeits any argument on that issue.").

Instead, Plaintiffs rely exclusively on a single decision they (incorrectly) believe shows their conclusory allegations are sufficient—namely, *Crawford v. Uber Technologies, Inc.*, No. 17-2664, 2018 WL 1116725 (N.D. Cal. Mar. 1, 2018). But *Crawford* says nothing about what is required to *plausibly* allege Article III standing, because the court in that case erroneously concluded that something less than the *Twombly/Iqbal* plausibility standard governs standing allegations. *Id.* at *2. That is not the law in this circuit.[2] *See Berger v. NCAA*, 843 F.3d 285, 289 (7th Cir. 2016) ("[T]o survive a challenge to standing under Rule 12(b)(1) a plaintiff must plead sufficient factual allegations, taken as true, that '*plausibly suggest*' each of these [standing] elements.") (emphasis added).

Regardless, the individual plaintiffs' bare allegations that they "want[] to use Uber," Compl. ¶¶ 33, 44, 49, are deficient even under *Crawford*'s not-quite-plausibility standard. The *Crawford* plaintiffs alleged they "plan to and will attempt to use the Uber App[] in the future as patrons should those programs, services, and accommodations become wheelchair-accessible." *Crawford*, 2018 WL 1116725, at *3. Here, the individual plaintiffs do not make even that conclusory allegation. All they have are conclusory allegations of "someday" intentions to use the

2 It's not the law in the Ninth Circuit, either. *See, e.g.*, *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012). Nor does the Ninth Circuit relax Article III's requirements in ADA cases, as one magistrate judge erroneously concluded in another case Plaintiffs cite. *See NFB v. Uber Techs., Inc.*, 103 F. Supp. 3d 1073, 1081 (N.D. Cal. 2015) ("The ADA directs this Court to relax its standard for injury in fact."). That's because "[n]o statutory regime can override a constitutional requirement in order to repair insufficient allegations of injury." *Disability Rights Wisc., Inc. v. Walworth Cty. Bd. of Supervisors*, 522 F.3d 796, 801 n.3 (7th Cir. 2008).

Uber App, which are insufficient for Article III standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992); *Scherr*, 703 F.3d at 1074–75; *see also Steel Co v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) ("allegations of future injury [must] be particular and concrete").

**B. Access Living Does Not Allege A Cognizable Organizational Injury.**

Now that Access Living has formally disclaimed associational standing (Pl. Br. 11), it must be dismissed for failing to plausibly allege organizational standing, including a cognizable organizational injury. An organization does not suffer an injury-in-fact unless the challenged conduct "perceptibly impaired" its ability to provide services. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). Neither the routine operating costs Access Living alleges it incurred nor abstract harm to its overall goals suffices. Uber Br. 8–10.

It is irrelevant that Access Living now characterizes its ordinary spend on transportation as "economic." Pl. Br. 12. What matters is whether Access Living would have spent that money on something else—specifically, to provide services. Access Living alleges nothing of the sort. That pleading failure sets this case apart from the sole case Access Living cites for the proposition that "organizational expenses for transporting staff, volunteers and clients" can satisfy the injury-in-fact requirements "when discrimination impacts their travel options." Pl. Br. 12. The organizations in that case provided an "uncontradicted laundry list of time spent and resources shuffled" and proof of how they "expend[ed] their own time and resources in a range of ways" in response to the defendant's conduct. *Liberty Res., Inc. v. Se. Penn. Transp. Auth.*, 155 F. Supp. 2d 242, 252 (E.D. Pa. 2001). By contrast, Access Living does not make even a conclusory allegation that it would have used the money it spent on transportation to provide other services. *See also Silha v. ACT, Inc.*, 807 F.3d 169, 174–75 (7th Cir. 2015) ("[A] plaintiff who would have

been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing.").[3]

Nor can Access Living gain standing by asserting an injury in its opposition brief that it does not allege in the complaint—*i.e.*, lobbying, unsuccessfully, for a local ordinance requiring Uber to guarantee "equivalent service." Pl. Br. 12–13. This unpled theory must be disregarded, for "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). Even if it were properly before the Court, Access Living's new theory of injury fails in at least two ways. First, Access Living's "expenditure of resources on advocacy is not a cognizable Article III injury." *Turlock Irr. Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015). Second, Access Living's new injury, like the injuries it alleges in the complaint, does not suggest any perceptible impairment to its ability to provide its services. Lobbying is what Access Living does. Compl. ¶ 10 (Access Living "performs its mission by offering ... individualized and systemic advocacy").

## II. PLAINTIFFS DO NOT ALLEGE ANY INJURY PLAUSIBLY ATTRIBUTABLE TO UBER.

Access Living chose to pay for its board members' transportation. That budgeting decision was not plausibly caused by anything Uber did or failed to do. Uber Br. 10. Access Living calls this a "circuitous principle" and argues that it can't be right. Pl. Br. 14. But it's uncontroversial that "self-inflicted injuries break the causal chain linking the defendant's conduct to the asserted injury." *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 518 (7th Cir. 2010) (citing *Petro-*

---

[3] Access Living should know this. It demonstrated organizational standing 17 years ago in a different case by proving "the time spent fighting [the defendant's] discrimination *would otherwise be spent* counseling, providing independent living skills training and referral services, advocating for the rights of the disabled, and otherwise fulfilling its legislatively mandated care services requirements to the disabled." *Access Living v. Chi. Transit Auth.*, No. 00-0770, 2001 WL 492473, at *4 (N.D. Ill. May 9, 2001) (emphasis added).

*Chem Processing, Inc. v. E.P.A.* 866 F.2d 433, 438 (D.C. Cir. 1989) (Ginsburg, R.B., J.)). Uber could not have caused Access Living's self-inflicted injury.

Nor did Uber cause the individual plaintiffs' claimed injuries. Uber Br. 10–11. Plaintiffs respond with deflection, calling this a "question of fact" that cannot be resolved at this stage. Pl. Br. 14. That ignores their own allegation that "Uber does not own the vehicles" Drivers use when providing rides requested via the Uber App. Compl. ¶ 5. It also ignores common knowledge that Uber does not dictate whether, when, where, how frequently, or with which vehicles Drivers choose to log on to the Uber App to seek and accept ride requests. That's probably why Plaintiffs fail to allege that Uber controls these decisions, which break the causal chain.

## III. PLAINTIFFS DO NOT MEANINGFULLY DISPUTE THEIR FAILURE TO PLAUSIBLY ALLEGE A REDRESSABLE INJURY.

Plaintiffs rest their redressability argument solely on *Crawford*'s shoulders. They do not explain how *Crawford*'s redressability holding is consistent with Article III (of the Constitution) or Title III (of the ADA); instead, Plaintiffs hope the logic of the decision speaks for itself. Unfortunately for Plaintiffs, the reasoning in *Crawford* collapses under even modest scrutiny.

The *Crawford* plaintiffs alleged and conceded that Drivers choose whether, when, where, and with which vehicles to seek and accept ride requests via the Uber App. Nevertheless, the *Crawford* court went beyond the pleadings and the parties' arguments to conclude that the plaintiffs had alleged a redressable injury, surmising that, hypothetically, Uber "could ... institute possession of a WAV as a prerequisite for drivers who wish to provide rides through the app." *Crawford*, 2018 WL 1116725, at *3. In addition to the court's failure to apply the correct pleading standard (as discussed above), that conclusion is wrong for several reasons.

*First*, the *Crawford* court's theory of redress violates Section 12184 and its implementing regulations, which do not require private entities (Uber or the Drivers who sign up to seek and

accept ride requests) to acquire WAVs except in very narrow circumstances not alleged to be present in this case or *Crawford*. *See* ECF No. 115 at 4–13. In fact, "[u]nder the ADA, no private entity is required to purchase an accessible automobile." 49 C.F.R., Pt. 37, App'x D. The *Crawford* court failed to reconcile its redressability holding with that critical point of law and found the redressability element satisfied only by referencing a remedy the court cannot order.

*Second*, the WAV-prerequisite the *Crawford* court envisioned would not remedy the injury claimed by those plaintiffs (and by Plaintiffs here)—the inability to request and receive WAV rides via the Uber App. Suppose Uber were to permit only Drivers with WAVs to sign up to seek and accept ride requests via the Uber App. Whether riders could successfully request and obtain WAV rides via the Uber App would still turn on whether enough Drivers exercise their discretion and choose to obtain WAVs, to sign up to seek and accept ride requests via the Uber App, and to actually provide the rides requested. *See* Uber Br. 12. Redressability fails when—as in *Crawford* and as here—"a plaintiff's asserted injury arises from" one entity's "allegedly unlawful regulation (or lack of regulation) of *someone else*," because redress for such a plaintiff "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Lujan*, 504 U.S. at 562 (emphasis in original).

*Finally*, the ground on which the *Crawford* court determined the plaintiffs' injury was *redressable* flouts Article III's *causation* requirement. If, as the *Crawford* court necessarily presumed, the plaintiffs' injury was caused by the fact that Drivers are free to sign up to seek and accept ride requests via the Uber App using vehicles *of their choice* (be they WAVs or one of dozens of other types of vehicles), *Uber* did not cause that injury. *See* Uber Br. 10–11.

## CONCLUSION

For the foregoing reasons, and those stated in Uber's opening brief, the complaint should be dismissed for lack of subject-matter jurisdiction.

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

Dated: July 26, 2018

s/ Anne Marie Estevez

Anne Marie Estevez (*pro hac vice*)
200 Biscayne Boulevard, Suite 5300
Miami, FL 33131
T: 305.415.3000
F: 305.415.3001
annemarie.estevez@morganlewis.com

Stephanie Schuster (ID 1011924)
Patrick Harvey (ID 995570)
Clara Kollm (ID 1029841)
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: 202.739.3000
F: 202.739.3001
stephanie.schuster@morganlewis.com
patrick.harvey@morganlewis.com
clara.kollm@morganlewis.com

Kristal D. Petrovich (ID 6321292)
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
T: 312.324.1000
F: 312.234.1001
kristal.petrovich@morganlewis.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that the on July 26, 2018 the foregoing was filed with this Court's CM/ECF system, which will notify all counsel of record including:

Steven P. Blonder
Jonathan L. Loew
Daniel A. Hantman
MUCH SHELIST, P.C.
191 N. Wacker Drive, Suite 1800
Chicago, IL 60606
sblonder@muchshelist.com
jloew@muchshelist.com
dhantman@muchshelist.com

Charles R. Petrof
ACCESS LIVING OF METROPOLITAN CHICAGO
115 W. Chicago Avenue
Chicago, IL 60654
cpetrof@accessliving.org

s/ Anne Marie Estevez
Anne Marie Estevez